**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 10, 2005**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-50029
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THERESA LUCRETIA STRAIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before GARWOOD, JOLLY and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Theresa Lucretia Strain was convicted by a jury of one count of harboring or concealing a fugitive, her husband Robert Navarrette Chavez, in violation of 18 U.S.C. § 1071. The conviction would have been an easy affirmance if the case had been tried in New Mexico. But it was not. We reverse because the evidence is insufficient to prove that the crime of harboring or concealing a fugitive occurred in the Western District of Texas, where the case was tried. See U.S. CONST. art. III, § 2, amend. VI.

I

The events leading up to Theresa Strain's conviction began on June 18, 2003, when a federal warrant was issued for Robert

Chavez's arrest on various narcotics and firearms charges. On June 24, Deputy U.S. Marshals Steve Clark and Phillip Maxwell went to Strain's Midland, Texas, residence in an attempt to locate Chavez. Clark informed Strain and two of her roommates of Chavez's outstanding arrest warrant. Maxwell further explained to Strain that if she in any way assisted Chavez, she could be exposing herself to criminal penalties. Strain responded that she had not spoken to Chavez for two months, but then admitted that he had called her at work on a few occasions, but not within the last two weeks (which would place these calls before June 18, when Chavez was indicted).

Approximately two days after the marshals' visit, one of Strain's roommates, Elizabeth Rodriguez, called the marshals' office and told them that Strain had asked her to watch Strain's children so she could travel "to the next town". Rodriguez testified at trial that she believed that Strain was referring to Big Spring, Texas, which is located approximately forty miles from Midland. Rodriguez further testified that Strain never told her why she made the trip.

Then, according to Strain, on the night of June 27, Chavez called her at the Pizza Hut in Midland where she worked, told her that he wanted to turn himself in to the authorities, and instructed her to meet him in Carlsbad, New Mexico. She then drove to Carlsbad with her three children. Upon meeting Strain in Carlsbad on June 28, Chavez told her to rent a motel room. Strain

did so, and Chavez later met her there. That night and the following day, Strain testified, they discussed Chavez's plan to turn himself in. When Strain awoke on the morning of June 30, however, Chavez had already exited through the window. Strain testified that, because he left his personal effects in the room, she thought he would be returning, and thus set out with her children to get something to eat.

While driving, Strain was stopped by officers with the Pecos Valley Drug Task Force, who observed that none of her three children were wearing seatbelts. The officers became suspicious when they saw that she was wearing nothing but a nightgown. Strain explained that she was on vacation and staying in a local motel. When asked where her husband was, she replied that he was wanted for drug violations and that she had not seen him in two months. Because they did not believe Strain's story, the officers asked to search her motel room, and she consented.

Upon discovering men's clothing in the motel room, the officers advised Strain of her rights. At that point, she admitted that Chavez had been in the room that morning and that a Cadillac parked outside belonged to him. The officers then noticed that the bathroom window was open, and a footprint on the wall indicated that someone had climbed out of it. Less than one hour later, a patrol unit found Chavez in an empty lot nearby.

Strain was indicted on one count of harboring or concealing a fugitive in violation of 18 U.S.C. § 1071. Strain's indictment

3

charged that the offense occurred in the Western District of Texas and the District of New Mexico. She was tried and convicted in the Western District of Texas's Midland Division. Strain challenged venue at trial via two motions for acquittal under FED. R. CRIM. P. 29(a), one at the close of the Government's case and one at the close of all evidence. The district court denied both motions. The court, however, gave the jury special instructions regarding proof of venue by a preponderance of the evidence. The jury returned a special verdict finding that "the offense charged ... was begun in the Western District of Texas". As such, venue was deemed proper and Strain was convicted. She now appeals the conviction.

## II

The right of the accused to be tried in the state and district where the alleged offense was committed -- that is, the venue requirement -- finds its source in both the United States Constitution[1] and federal statutory law.[2] In the case before us, there is some dispute between the parties as to what standard we

---

[1] Article III, § 2 provides that the "trial of all Crimes ... shall be held in the State where said Crimes shall have been committed". The Sixth Amendment further entitles the accused to trial "by an impartial jury of the State and district wherein the crime shall have been committed".

[2] See, e.g., 18 U.S.C. § 3237(a) (providing that, where the Government alleges a continuing offense committed in multiple districts, it must show that the trial is taking place "in any district in which [the] offense was begun, continued, or completed"); see also FED. R. CRIM. P. 18.

4

are to apply in reviewing questions of venue.  As the Government points out, we previously have said that "[w]e review all questions concerning venue under the abuse of discretion standard".  United States v. Brown, 250 F.3d 907, 912 (5th Cir. 2001).  Strain, however, asserts that venue is a legal issue and is thus reviewed de novo.

The source of the parties' disagreement is an imprecise framing of the question for review.  Strain, however, does allege a specific, reversible error.  She contends that, given the lack of evidence to support venue, the district court erred in denying her motions for acquittal.  Thus, the relevant question for this court is whether the Government presented the jury with sufficient evidence to support a finding that Strain's offense "was begun, continued or completed in the Western District of Texas", such that FED. R. CRIM. P. 29(a) would not mandate acquittal for failure to prove venue.  As such, we will review to determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational finder of fact could have found" that venue was proven by a preponderance of the evidence.[3] Jackson v. Virginia, 443 U.S. 307, 319 (1979).

A

---

[3] Although venue is an element of any criminal offense, the prosecution's burden of proof in establishing venue differs from the burden of proving other elements.  The prosecution need only show the propriety of venue by a preponderance of the evidence, not beyond a reasonable doubt.  United States v. Winship, 724 F.2d 1116, 1124 (5th Cir. 1984).

We first consider whether Strain has waived her objection to venue by failing to raise it before trial. Generally, "[a] defendant indicted by an instrument which lacks sufficient allegations to establish venue waives any future challenges by failing to object before trial". United States v. Carreon-Palacio, 267 F.3d 381, 392-93 (5th Cir. 2001). However, "where adequate allegations are made but the impropriety of venue only becomes apparent at the close of the government's case, a defendant may address the error by objecting at that time, and thus preserving the issue for appellate review". Id.

Strain's objection to venue essentially runs as follows: Strain's indictment contained an allegation that venue was proper. Further, Strain was aware that the Government intended to present evidence of events -- most notably, her telephone conversations with Chavez -- that might have formed the basis for venue in the Western District of Texas, depending upon how they were presented to the jury at trial. Strain's claim is that the evidence finally presented to the jury was not sufficient to support a finding that venue was proper.

We agree that Strain's objection as to the sufficiency of the evidence could not have been raised adequately before the prosecution presented the entirety of its case. Strain did not know exactly what evidence the Government might present at trial. Indeed, it appears that the Government itself was somewhat confused as to what evidence it would present in support of venue, given the

6

incorrect assertion in its brief to this court that Big Spring, Texas, to which Strain supposedly traveled on or about June 26, lies in the Western District of Texas.[4] Strain did expect, however, that the Government would call Elizabeth Rodriguez to testify regarding Strain's telephone conversations with Chavez. During its examination of Rodriguez, however, the Government failed to elicit any testimony regarding those conversations. Thus, it appears that the impropriety of venue would have become apparent to Strain only after the prosecution had presented its evidence. Strain's objection was therefore preserved by her motions for acquittal under FED. R. CRIM. P. 29(a) at the close of the prosecution's case and at the close of evidence. See id.

B

We turn now to the substance of Strain's appeal. Where, as here, a criminal statute lacks an express venue provision, the Government must show by preponderance of the evidence that the trial is occurring in a district "where the offense [was] done". See United States v. Anderson, 328 U.S. 699, 705 (1946); see also FED. R. CRIM. P. 18. Where the Government alleges a single continuing offense committed in multiple districts, it must show that the trial is taking place "in any district in which [the]

---

[4] In fact, as the Government noted at oral argument, Big Spring lies in the Northern District of Texas. As such, we disregard the Government's contention that Rodriguez's testimony regarding Strain's alleged trip to Big Spring might form the basis for the jury's finding of venue in the Western District.

offense was begun, continued, or completed". 18 U.S.C. § 3237(a). Under either standard, the venue inquiry hinges to a large extent on how we define the offense.

The offense of which Strain was convicted is defined by 18 U.S.C. § 1071 as "harbor[ing] or conceal[ing] any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery or arrest, after notice or knowledge that a warrant or process has been issued ...". Strain does not dispute that a warrant had been issued for Chavez's arrest or that she had actual knowledge of that warrant. The issuance of the warrant and Strain's knowledge of it, however, are "circumstance elements" of the offense of harboring, insofar as they do not involve any proscribed conduct by the accused. See United States v. Bowens, 224 F.3d 302, 311 (4th Cir. 2000) (citing United States v. Rodriguez-Moreno, 526 U.S. 275, 280 n.4 (1999); United States v. Cabrales, 524 U.S. 1, 7-8 (1998)).[5]

---

[5] The Government's argument on this point is different from that which it advanced in Bowens. Instead of asserting that venue is proper in the district where a fugitive's warrant was issued, the Government here contends that "awareness of [a] federal warrant" is a "conduct element" of 18 U.S.C. § 1071, such that venue will lie in the district where the accused became aware that said warrant was issued. Though distinct, both arguments are meritless for the same reason: they seek to lay venue somewhere other than the place "where the criminal act is done". See Anderson, 328 U.S. at 705. The only acts prohibited by § 1071 are harboring and concealing. Becoming aware that a federal warrant has been issued does not necessarily involve conduct of any kind by the accused. It certainly does not involve "conduct constituting the offense" proscribed by § 1071. See Rodriguez-Moreno, 526 U.S. at 279. As such, it is a "circumstance element" of the offense, and therefore not a basis upon which venue may be established.

8

As such, neither may serve as a basis for establishing venue in the Western District of Texas. See id. Thus, the narrow question at issue here is whether a jury reasonably could have concluded that Strain's conduct concerning Chavez, while she was in the Western District of Texas, constituted the beginning, continuation, or completion of the act of "harbor[ing] or conceal[ing] ... so as to prevent his discovery or arrest". 18 U.S.C. § 1071.

This court has been clear in its holding that 18 U.S.C. § 1071 "requires some affirmative action to support a conviction. Failure to disclose a fugitive's location and giving financial assistance do not constitute harboring, but any physical act of providing assistance ... to aid the prisoner in avoiding detection and apprehension will make out a violation of section 1071". United States v. Green, 180 F.3d 216, 220 (5th Cir. 1999) (quoting United States v. Stacey, 896 F.2d 75, 77 (5th Cir. 1990)).

On appeal, the Government advances two basic arguments as to how a jury reasonably might conclude that Strain committed a "physical act of ... assistance" while in the Western District of Texas. First, the Government contends that it is more likely than not that, during her June 27 telephone conversation with Chavez,[6]

---

[6] The Government presents its argument on this point in less precise terms, asserting that it can be inferred that Strain warned Chavez of the marshals' investigation at some point during one of their "several" telephone conversations. We focus our inquiry on the June 27 conversation because it is the only conversation reflected in the record that occurred after the marshals' visit on

9

Strain warned him to stay away from Midland.  In the alternative, the Government contends that Strain's telephone conversations and subsequent journey across the Western District of Texas toward Carlsbad constituted the beginning of a continuing act of harboring that was completed in New Mexico.  We will address both contentions in turn.

(1)

The Government first contends that a jury reasonably could infer from the evidence presented that, during the June 27 telephone conversation, Strain "warned Chavez about the outstanding warrant and the fact that officials had come to her residence looking for him".  The Government argues that such a warning is an act of concealing in violation of § 1071, and thus, establishes venue in the Western District of Texas.  Strain, however, denies having provided Chavez with such a warning and insists that the purpose of her final telephone conversation was to plan Chavez's surrender to authorities.[7]

_____

June 24.

[7] The Government cites our decision in <u>United States v. O'Banion</u> to argue that the jury was entitled to reject Strain's characterization of the June 27 conversation as a matter of witness credibility.  943 F.2d 1422, 1427 (5th Cir. 1991).  While this is certainly true, the jury's right to reject a witness's account of events does not entitle it to substitute another account for which there is no evidentiary support. <u>See</u>, <u>e.g.</u>, <u>United States v. Davis</u>, 666 F.2d 195, 199 (5th Cir. 1980) (noting that a jury's inferences regarding venue must be supported by "evidence in the record as a whole").  The relevant question, then, is whether there is support in the record for the alternative account of the June 27 conversation proposed by the government.

We will assume, _arguendo_, that the alleged telephonic warning is a "physical act" of concealing within the meaning of our holding in _Green_. The relevant question thus becomes whether, under a preponderance of evidence standard, the evidence actually presented would permit a jury reasonably to infer that such a warning occurred.

The Government cites our opinion in _Weaver v. United States_ for the proposition that a jury's inferences based on circumstantial evidence may form the basis for a finding that venue has been established.[8] _See_ 298 F.2d 496, 497-98 (5th Cir. 1962). Obviously, this is correct; circumstantial evidence may be admissible to prove venue, just as it may be admissible for any other purpose. Our holding in _Weaver_, however, does not alter the general rule that a jury's inferences must be supported by some evidence in the record as a whole. _See_, _e.g._, _United States v. Davis_, 666 F.2d 195, 199 (5th Cir. 1980).

In the case before us, there is no evidentiary hook to which the jury might attach the inference suggested by the Government. The only hook available is the telephone conversation occurring on

_____

[8] In _Weaver_, we held that a jury reasonably could infer venue in the Southern District of Alabama from testimony that the defendant was observed committing the violation on certain streets, the names of which were, if not peculiar to Mobile, Alabama, certainly uncommon and well-known to its inhabitants. In affirming Weaver's conviction, we noted that the inferential step involved was sufficiently minor as to permit taking of judicial notice as to the city in which the named streets were located. 298 F.2d at 498-99.

June 27, the night before Strain left for Carlsbad. The only evidence in the record concerning the content of that conversation comes from the testimony of Strain herself. To be sure, the entirety of the Government's argument relating to "concealing by warning" rests on this testimony:

> Q. All right. Now, after you had this conversation with Deputy Maxwell, did Robert Chavez try to get in touch with you again?
>
> A. They said that he had called during the day, but I wasn't there. And then a couple of nights before he had called and said he -- he was very depressed. He had a lot of things on his mind, like about he didn't want to live no more. But he wanted to talk through to see where he wanted to turn himself in. We were having a real personal discussion.
>
>                       \*\*\*
>
> Q. Did you tell Mr. Chavez -- did you give Mr. Chavez Mr. Maxwell's number and tell him to turn himself in to Mr. Maxwell?
>
> A. I told him everything that had been going on for the last two months. I told him everybody who came up to me, who approached me with this. And he also told me that he wasn't wanted; that everybody -- they were just trying to get to this other guy that he knows; that they're just saying that so I would probably say something that I wasn't supposed to, and that -- he said that he didn't want to go through Maxwell because I -- what I had told him Maxwell said. He told me, "Oh, okay. I'm going to walk up to Maxwell, and he's just going to drop me like that." And I was like, "I know this other guy." That is when I brought in the other -- Roberts.

12

On cross-examination, the Government had a clear opportunity to elicit more information concerning the content of the telephone conversation, but elected to ask only one question, which had no relevance to the "warning" theory it advances on appeal:

> Q. But you admit you were called in Midland; you agreed to meet Robert, who you knew was a fugitive in Carlsbad; is that correct?
>
> A. Uh-huh.

Although there is ample evidence to show that, during this telephone conversation, Strain made plans to meet and harbor Chavez in New Mexico, there is nothing in the testimony to suggest that Strain warned Chavez to stay away from Midland in general or her residence in particular. Indeed, an opposite inference is suggested when the conversation is considered in the context of the record as a whole: she gave no such "warning" because a "warning" would have been superfluous. Chavez apparently had fled Midland immediately after his indictment was issued,[9] and thus, was aware that authorities were searching for him there. Further, the record lends no doubt that, at the time of the conversation, Strain was aware of Chavez's presence in New Mexico and his strategy of avoiding Midland. Moreover, even if we assume that a "warning" to stay away from Midland implicitly was tucked into this conversation

---

[9] In his affidavit in support of Strain's indictment, Deputy Marshall Maxwell stated that, after his indictment on June 18, 2003, Chavez "immediately absconded and fled the jurisdiction of the Western District of Texas to avoid prosecution".

13

somewhere, an observation of the obvious would not have provided Chavez any measure of "aid ... in avoiding detection or apprehension". See Green, 180 F.3d at 220. All of the evidence -- that is, all of the evidence -- that speaks to this subject matter unequivocally suggests that at the time of this telephone conversation, Chavez knew of the risk of apprehension and was intentionally avoiding Midland in general and thus, by necessity, Strain's residence in particular.

In sum, the Government, which had the burden of proof, has failed to proffer evidence from which a jury could infer that it was more likely than not that the alleged warning occurred; the conversation upon which the government relies only shows that Strain had a general desire to assist Chavez, and made plans to do so in New Mexico.

(2)

Finally, the Government contends that, even if Strain's telephone conversations were not, in themselves, violations of § 1071, they were part of a continuing offense, begun in the Western District of Texas, such that venue would be proper under 18 U.S.C. § 3237(a). On its face, this argument has some appeal. Given the particular facts of this case, however, we cannot agree.

A continuing offense is "a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force". United States v. Asibor, 109 F.3d 1023, 1031 (5th Cir. 1997) (quoting United States v. Midstate

14

Horticultural Co., 306 U.S. 161, 166 (1939)). Obviously, under certain circumstances, an act of harboring or concealing in violation of § 1071 may fall under this definition. That is to say, once the offense of harboring has actually commenced, it may be continued or completed in other districts or states, where venue may be proper. Nonetheless, § 3237(a) does not exempt continuing offenses from the general principle that preparatory acts alone cannot support venue. See United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1189-90 (2d Cir. 1989). Strain's telephone conversations with Chavez and subsequent journey through the Western District of Texas toward Carlsbad, although indispensable to the ultimate act of harboring in New Mexico, were preparatory acts for the commission of the actual crime –- much like purchasing a gun and traveling to a bank to commit a robbery –- and thus insufficient to support a finding of venue.

III

In sum, we hold that the jury's finding of venue is not supported by evidence. As noted supra, a necessary corollary of this holding is that the district court's denial of Strain's motion for acquittal under FED. R. CRIM. P. 29(a) was in error. For the reasons above, we reverse the ruling, vacate the judgment and remand to the district court for entry of a judgment of acquittal.

REVERSED, VACATED and
REMANDED WITH INSTRUCTIONS.

15