United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 19, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 05-51373

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARTHA ESQUIVEL PEREZ; MARIA GUADALUPE FONCECA,

Defendants-Appellants.

---

Appeals from the United States District Court
for the Western District of Texas

---

Before GARWOOD, WIENER, and CLEMENT, Circuit Judges.

GARWOOD, Circuit Judge:[*]

Appellants Fonceca and Perez were found guilty by a jury of conspiracy to possess with intent to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Their convictions arose out of their participation in a vast methamphetamine distribution conspiracy that stretched from California to Texas, and involved numerous transactions and conspirators. Fonceca was identified

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

as the supplier of the methamphetamine distributed in Texas and also as a participant in several covert monetary or financial transactions designed to facilitate the conspiracy to distribute methamphetamine.  Perez was shown to be a courier, or mule, for the organization, illegally transporting money and methamphetamine between California and Texas.

Both appellants challenge their convictions, contending that venue in the Western District of Texas was improper.  In addition, Fonceca also challenges the sufficiency of the evidence supporting her conviction for money laundering conspiracy, alleges that the district court erred by restricting her cross-examination of a government witness and co-conspirator, Dominguez, and by refusing to order disclosure of a government agent's reports or debriefing notes, and also argues that the district court erred in denying her motion for mistrial due to the improper admission of 404(b) evidence through witness testimony.  Perez also challenges her sentence, claiming the district court erred by sentencing her to a sentence longer than that of her cooperating co-conspirators.

We affirm.

## I. Factual Background

This appeal emerges from a case pertaining to a drug distribution conspiracy that stretched between southern California and Texas, involving numerous conspirators, copious

2

amounts of methamphetamine, and many financial transactions varying in nature. In early January 1998, Rudy Ayala (Ayala) and others began acquiring large amounts of methamphetamine from sources in Texas, California, and Mexico to distribute in the Dallas area. When the head of the organization, Valente Martinez, was arrested in 1999, Ayala assumed control of the Dallas-area drug distribution activities. In July or August 2000, Ayala met Felipe Dominguez (Dominguez), an individual from southern California who was visiting Dallas. They soon realized they had a business compatibility—Ayala needed methamphetamine to distribute and Dominguez ostensibly had sources in California from whom he could obtain the drugs.

After a few methamphetamine-cash exchanges in which Dominguez and his wife transported methamphetamine from California to Texas themselves, Ayala flew to California to meet the source. There he met the ultimate supplier to the conspiracy, appellant Fonceca, who agreed to continuously supply Ayala and Dominguez with methamphetamine.

Ayala began receiving biweekly shipments in ten-pound amounts of methamphetamine fronted by Fonceca and transported by Dominguez from August 2000 to March 2001. In mid-September 2000, after Dominguez became uncomfortable with transporting drugs himself, Fonceca arranged for her friend, Perez, from Phoenix, Arizona to begin transporting the methamphetamine from California

3

to Texas in exchange for $1,000 per pound of methamphetamine transported. Perez ultimately made an estimated thirteen trips transporting methamphetamine or cash money between California and Texas. Perez often used Amtrak trains or Greyhound buses to travel, concealing the drugs or money by taping packages to her body underneath a large shirt. Other times she drove a blue Astro van. Another courier for the conspiracy, Steven Carrasco (Carrasco), would also make deliveries of methamphetamine, and several times drove vehicles to California for Ayala. The vehicles were to be received as payments for drugs and often had large amounts of cash hidden in the door panels. Several times Fonceca received vehicles from Ayala in exchange for methamphetamine, and Ayala never put the vehicles' titles in his name nor transferred title when Fonceca took possession.

Once the methamphetamine arrived in Dallas, Ayala would cut the methamphetamine and then would front it to Fernando Ramirez, Jimmy Nguyen and others, who would distribute it to Brad Mills and others. Brad Mills would then sell the methamphetamine to parties in Waco and West, both in the Western District of Texas.

Based on the cooperating co-conspirators' testimony and government's investigation, Perez was held accountable for the distribution of 130 pounds of methamphetamine. Perez was sentenced to concurrent terms of 292 months' imprisonment for conspiring to possess with intent to distribute methamphetamine

4

(Count One) and of 240 months for conspiracy to launder money (Count Two).[1]  Fonceca was held accountable for the distribution of 140 pounds of methamphetamine, and was sentenced to concurrent terms of 294 months for conspiracy to possess with intent to distribute (Count One) and of 240 months for money laundering (Count Two).[2]

## II. Discussion

### A. Venue in Western District of Texas

Both appellants assert that, with respect to each count, the government failed to offer evidence sufficient to support venue in the Western District of Texas.  Since the appellants' conspiracies of money laundering and methamphetamine possession with intent to distribute were intertwined, the venue-propriety analysis is generally the same for each count with which the appellants were charged.  "[W]e previously have said that '[w]e review all questions concerning venue under the abuse of discretion standard.'" *United States v. Strain*, 396 F.3d 689, 692 (5th Cir. 2005) (quoting *United States v. Brown*, 250 F.3d 907,

---

[1] On the drug conspiracy count Perez was sentenced to five years' supervised release; on the money laundering conspiracy she was sentenced to two years' supervised release concurrent with that on the drug count.  A fine of $500 (below guideline because of inability to pay) was imposed on each count.

[2]  On Count One a ten year term of supervised release was imposed; on Count Two the term of supervised release was three years, concurrent with that on Count One.  A fine of $1,000 (below guideline range due to inability to pay) was imposed on each count.

5

912 (5th Cir. 2001)).  However, both appellants contend there was insufficient evidence presented at trial to support venue on either count so the district court erred in denying their motions for directed verdict at the conclusion of the case.  Hence, "the relevant question for this court is whether the Government presented the jury with sufficient evidence to support a finding that [the defendants'] offense[s] '[were] begun, continued or completed in the Western District of Texas.'"  *Id.* "[C]ircumstantial evidence alone is sufficient to establish venue" so long as venue is proved by a preponderance of the evidence.  *United States v. Loe*, 248 F.3d 449, 465 (5th Cir. 2001).[3]

We have repeatedly held that, for continuing offenses like those charged here, "venue in conspiracy cases is proper in any district where the agreement was formed or where an overt act in furtherance of the conspiracy was performed." *United States v. Pomranz*, 43 F.3d 156, 158–59 (5th Cir. 1995); 18 U.S.C. § 3237(a); *see also United States v. Solis*, 299 F.3d 420, 445 n.76, n.77 (5th Cir. 2002); *United States v. Winship*, 724 F.2d 1116, 1125 (5th Cir. 1984)).  Therefore, in this case, venue may

---

[3] Since the allegations of the indictment are sufficient to support venue in the Western District of Texas, complaint as to venue was properly raised by defendants' Rule 29(a), FED. R. CRIM. P., motions made at the close of the government's case in chief (neither defendant having thereafter presented any evidence). *See Strain*, 396 F.3d at 693.

permissibly lie in any district where an overt act in furtherance of the conspiracies was committed—even if appellants themselves never entered the district at issue. *United States v. Caldwell*, 16 F.3d 623, 624 (5th Cir. 1994); *United States v. Parrish*, 736 F.2d 152, 158 (5th Cir. 1984). And this is so even though an overt act is not an element of the conspiracy charged in either count here. *See Whitfield v. United States*, 125 S.Ct. 687, 690-93 (2005). It has been stated that for this purpose:

> "The act must occur subsequent to the formation of the conspiracy agreement and prior to or in completion of the conspiratorial objective. It also must have been done in furtherance of the accomplishment of that objective . . . No distinctions are drawn based on the importance of the act to the accomplishment of the objective or on the legality of the act. A simple and commonplace legal activity may be sufficient, even though the action may be one that would have been taken in any event even had there been no illegal purpose. The act can be that of a single conspirator or even an innocent agent who is acting at his direction. The other conspirators need not have counseled the commission of the act nor even have been aware that it was to be done."[4] (footnotes omitted)

---

[4] 4 LaFave, Israel & King, Criminal Procedure (2d Ed. 1999), § 16.2(f) at 538 (footnotes omitted). *See also, e.g., United States v. Johnson*, 165 F.2d 42, 45 (3d Cir. 1947) (". . . it is not necessary that an overt act in furtherance of conspiracy necessarily be a criminal act . . . an innocent act by a third party, if caused by a previous act or contact on the part of one of the conspirators, would be enough . . . the filing of the trustee's report . . . itself a perfectly legal act, may be an overt act in furtherance of the conspiracy if such filing is part of the general plan of the conspirators with regard to the subject matter in which the report is filed." (footnotes omitted)); *Winebrenner v. United States*, 147 F.2d 322, 325 (8th Cir. 1945) ("If . . . Mellor was induced by Winebrenner to make a fraudulent bid on work . . . even though Mellor was innocent, the conspiracy was brought within . . . the Western District of

For money laundering conspiracy offenses, venue based upon an overt act in furtherance of the conspiracy being committed in the district of prosecution is provided for in 18 U.S.C. § 1956(i)(2) ("in any . . . district where an act in furtherance of the . . . conspiracy took place") and such venue is likewise appropriate under 18 U.S.C. § 3237(a), so our analysis proceeds on the basis of section 3237(a) as to both counts.

In the present case, the record clearly supports venue in the Western District. Testimony established that the conspirators used an Amtrak train on at least one occasion to transport methamphetamine to San Antonio, from whence conspirators drove the drugs to Dallas, Texas. San Antonio is indisputably within the Western District of Texas.[5] Appellants argue that that particular act took place in a different conspiracy since a different man became the leader of the organization after that particular drug transportation trip. However, the drugs involved all originated with Fonceca, before and after the San Antonio stop-over, and were destined for

_____

Missouri, where the contracts were carried out.").

    [5]San Antonio is within the Western District of Texas though it is located within a different division than is Waco. However, that does not alter our analysis since there is no constitutional right to be tried in a particular division within a district. *United States v. McKinney*, 53 F.3d 664, 673 (5th Cir. 1995). Venue is generally determined on a district, rather than a division, basis. *See* Rule 18, FED. R. CRIM. P.; 18 U.S.C. § 3237(a). We are aware of no special contrary provision applicable to either of the instant offenses.

8

distribution in the same areas. These are the same parties and same drug-source for whom Perez regularly transported. The evidence was sufficient for the jury to find that the transportation of Fonceca's methamphetamine from California to San Antonio (and thence to Dallas) was part of the charged conspiracy. *See United States v. Morrow*, 177 F.3d 272, 291 (5th Cir. 1999). *See also United States v. Therm-All, Inc.*, 373 F.3d 625, 637 (5th Cir. 2004); *United States v. Morgan*, 117 F.3d 849, 858 (5th Cir. 1997).

Further, Brad Mills' testimony established distribution of methamphetamine, pursuant to the conspiracy, in the Western District of Texas. Appellants contend that they were no longer participating in the conspiracy at the time Mills moved to the Western District in 2002 and began directly distributing there. However, Mills specifically testified that he distributed the methamphetamine to Joshua Adamson in West in 2000 and 2001 (before Mills moved to Waco), and Nguyen testified that he began fronting to Mills in early 2001 the same methamphetamine he obtained from Ayala and Dominguez. Mills further explained that he also fronted methamphetamine (which had been fronted to him by Nguyen) to Justin Hodge, who lived in Waco, and to Adamson, who lived in West. Both West and Waco are in McClennan County, which is within the Western District of Texas. Prior to 2002 Hodge fronted some of that methamphetamine to Adamson in West. While

9

Hodge and Adamson sometimes had to travel to the Dallas area to obtain the methamphetamine from Mills (and to pay him for drugs he previously fronted to them, using proceeds of their sale of the fronted drugs) prior to 2002, they obtained a quarter-pound to a pound of methamphetamine each time, amounts sufficient to shown intent to distribute within their home bases in the Western District.

The money laundering count (Count Two) alleged that Fonceca and Perez and others conspired, contrary to 18 U.S.C. § 1956(h), to commit one or more of the following offenses, namely: (1) conducting and attempting to conduct a financial transaction (involving property known to represent proceeds of unlawful activity) with intent to promote the specified unlawful activity of the conspiracy to distribute and to possess with intent to distribute methamphetamine, contrary to 18 U.S.C. § 1956(a)(1)(A)(i); and/or (2) conducting and attempting to conduct a financial transaction (involving property known to represent proceeds of unlawful activity) knowing it was wholly or partially designed to conceal the nature, location, source, ownership or control of proceeds of the specified unlawful activity of the conspiracy to distribute and to possess with intent to distribute methamphetamine, contrary to 18 U.S.C. § 1956(a)(1)(B)(i); and/or (3) engaging in, and attempting to engage in, monetary transactions in property derived from the specified unlawful of conspiracy to distribute and to possess with intent to distribute

10

methamphetamine, contrary to 18 U.S.C. § 1957(a). This count goes on to allege that "[t]he conspiracy was executed in the following manner through the following means." It was alleged, among other things, that as a part of the conspiracy, methamphetamine was distributed "on a consignment basis, that is 'fronted'" by Fonceca in California and transported to Texas, in part by Perez, and was fronted by conspirator Ayala to, among others, Nguyen, and that "these people would then front" that methamphetamine to "Mills and others, including people in the Western District of Texas, Waco Division." It was further alleged that when the methamphetamine was sold and "currency" was "collected," it made its way back up the distribution chain and ultimately a portion of the currency made its way back to Fonceca in California, sometimes transported there from Texas by Perez.

The evidence sufficed to allow the jury to find by a preponderance of the evidence that, for example, the fronted conspirators who distributed the methamphetamine in the Western District of Texas took some of the currency proceeds of the sales they made there and, in or partly in the Western District of Texas, transported and delivered those currency proceeds to the conspirator who had fronted the drugs to them, and that such a delivery and disposition (see section 1956(c)(3)) of the currency constituted a financial transaction (see section 1956(c)(4) & (5)) in property known to represent the proceeds of the unlawful activity of the distribution of methamphetamine and was entered

11

into by both conspirators who were parties thereto with the intent to promote the methamphetamine distribution conspiracy alleged in Count One, contrary to 18 U.S.C. § 1956(a)(1)(A)(i). Such would plainly constitute an overt act in the Western District of Texas in furtherance of the Count Two conspiracy. More generally, the jury could find by a preponderance of the evidence that the money laundering conspiracy charged in Count Two included the making of sales of methamphetamine in the Western District of Texas and the collection of a portion of the currency proceeds of such sales and the laundering of such proceeds, including laundering that took place outside of the Western District. For venue purposes, the overt act need not be the whole crime, but merely an act (including, in a proper case, an act of a non-conspirator caused by a previous act or contact by a conspirator) in furtherance of the conspiracy. *See* note 4 *supra* and accompanying text.[6]

---

[6] Also, the evidence here would permit a finding that there was in essence a single conspiracy with two interdependent illegal objectives, each of which materially furthered the achievement of the other, the first objective being to possess methamphetamine with intent to distribute it and/or to distribute it, contrary to 21 U.S.C. § 841(a)(1), and the second objective being to "launder" proceeds of the methamphetamine so distributed, contrary to 18 U.S.C. § 1956(a)(1)(A)(i), and/or § 1956(a)(1)(B)(i), and/or § 1957(a). Because conspiring for the purpose of the first objective is denounced by 21 U.S.C. § 846, and conspiring for the purpose of the second objective is denounced by a different statute, namely 18 U.S.C. § 1956(h), two offenses (one for conspiring for the first objective, the other for conspiring for the second objective) may properly be charged (and convicted for) notwithstanding there is in fact essentially only a single conspiracy (albeit with two unlawful objectives).

12

Appellants' reliance on *United States v. Cabrales*, 118 S.Ct. 1772 (1998), is misplaced, for there the Court was careful to point out that "*[n]otably*, the counts at issue do not charge Cabrales with conspiracy; they do not link her to, or assert her responsibility for, acts done by others." *Id*. at 1776 (emphasis added). *Cabrales* also specifically distinguished *United States v. Hyde*, 32 S.Ct. 793 (1912) (holding that venue for a conspiracy prosecution was proper in a district where an overt act took place although defendant had never been there and the conspiracy was not formed there), on the ground that it was a conspiracy prosecution. *Cabrales* at 1776-77 ("By contrast, the counts at issue in this case allege no conspiracy. They describe activity in which Cabrales alone, untied to others, engaged"). Here, by contrast, the *only* offenses alleged are conspiracies and the evidence shows agreement and concerted action among defendants and many others and the movement of drugs from California to Texas (including the Western District) and of the proceeds of the sale of the drugs from Texas (including the Western District) back to California with laundering thereof along the way. Compare *Cabrales* at 1777 ("The counts before us portray her [Cabrales] and the money she deposited and withdrew as moving

---

*Albernaz v. United States*, 101 S.Ct. 1137, 1142-43 (1981). The rule is otherwise where only a single conspiracy statute is violated. *Braverman v. United States*, 63 S.Ct. 99, 101-02 (1942).

inside Florida only"). In *United States v. Rodriguez-Moreno*, 119 S.Ct. 1239, 1244 (1999), the Court reaffirmed the validity of *Hyde*. Again, in *Whitfield v. United States*, 125 S.Ct. 687, 693 (2005), the Court reiterated that for a conspiracy prosecution under section 1956(h) "venue is proper in any district in which an overt act in furtherance of the conspiracy is committed, even where an overt act is not a required element of the conspiracy offense." *See also, e.g., United States v. Nichols*, 416 F.3d 811, 823-24 (8th Cir. 2005); *Prosper v. United States*, 218 F.3d 883, 884 (8th Cir. 2000).

We find no merit in appellants' contention that venue laid in the Western District of Texas was improper.

**B.   Sufficiency of Evidence to Support Fonceca's Money Laundering Conspiracy Conviction**

Fonceca argues that the evidence is insufficient to support her conviction for conspiracy to money launder (Count Two).[7] Fonceca claims the evidence only shows that she repeatedly received payment for her merchandise and does not show that she conspired with the others to disguise or conceal the funds.

We "must affirm if a rational trier of fact could have found that the evidence established the essential elements of the

---

[7]   Except with respect to venue, as discussed in part IIA above, Perez does not challenge the sufficiency of the evidence as to either count and Fonceca does not challenge the sufficiency of the evidence as to the drug distribution conspiracy (Count One).

14

offense beyond a reasonable doubt." *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996).  We review the evidence *de novo*, in the light most favorable to the prevailing party. *United States v. Resio-Trejo*, 45 F.3d 907, 910 (5th Cir. 1995). Credibility and factual determinations are resolved in favor of the jury's verdict. *Id.* at 911.

Fonceca was convicted of conspiracy to money launder in violation of 18 U.S.C. § 1956(h) (Count Two).  "'Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence . . . . An agreement may be inferred from a "concert of action."'" *United States v. Virgen-Moreno*, 265 F.3d 276, 284–85 (5th Cir. 2001).

The money laundering charges alleged as a basis of the conspiracy charge included violations of 18 U.S.C. §§ 1956(a)(1)(A)(i), and/or 1956(a)(1)(B)(i), and/or 1957(a). The elements required to establish money laundering under section 1957(a) are: "1) property valued at more than $10,000 was derived from specified unlawful activity . . . ; 2) [the perpetrator] engaged in a monetary transaction with this property; and 3) [the perpetrator] knew that this property was derived from unlawful activity."  *United States v. Wilson*, 249 F.3d 366, 379 (5th Cir. 2001).   To establish money laundering under section 1956(a)(1), the government must prove that "1) [the perpetrator] conducted or attempted a financial transaction, (2) which he knew involved

15

proceeds arising from unlawful activity, (3) with the intent to promote or further those illegal actions [section (a)(1)(A)(i)], or (4) with the knowledge that the transaction's design was to conceal or disguise the nature or source of the illegal proceeds

[section (a)(1)(B)(i)]." *United States v. Pennell*, 409 F.3d 240, 243 (5th Cir. 2005). The "defendant need not have specifically intended to conceal or disguise the proceeds of the unlawful activity" as "[i]t is sufficient for the defendant merely to be aware of the perpetrator's intent to conceal or disguise the nature or source of the funds." *United States v. Adair*, 436 F.3d 520, 524 (5th Cir. 2006). Compensating co-conspirators for their participation in the conspiracy in order to continue the illegal activity is sufficient to show promotion or carrying on of unlawful activity. *Wilson*, 249 F.3d at 377-78.

Fonceca's arguments fail, and the elements of the charge of conspiring to money launder were adequately shown. The evidence showed that members of the conspiracy would conspire to transport currency from Texas to Fonceca in California by utilizing bank accounts, businesses, and numerous assets. Additionally, many of the assets—particularly automobiles—were placed in fictitious names to conceal and disguise the nature and ownership of the assets. Several times, large amounts of cash proceeds from the drug trade (approximately $150,000 in one trip) used to further

16

the methamphetamine conspiracy were transported from Texas to Ayala and Fonceca in California, hidden in the door panels of a Chevrolet Tahoe SUV.  The government also presented evidence of Perez's furtive courier runs between California and Texas to transport both cash and methamphetamine for the purpose of continuing the unlawful activity.

The jury could have inferred from the significant amount of evidence presented that Fonceca had engaged in a conspiratorial agreement to violate money laundering laws in an effort to conceal the illegal nature of the substantial funds exchanging hands facilitating and furthering the carrying on of this drug distribution conspiracy.  *See Virgen-Moreno*, 265 F.3d at 285–86.

## C.   *Brady–Giglio* or Jencks Act Material: Government Agents' Witness Debriefing Notes

We review a district court's rulings regarding discovery under the Jencks Act for clear error.  18 U.S.C. § 3500; *United States v. Brown*, 303 F.3d 582, 591 (5th Cir. 2002).  *Brady* determinations are reviewed *de novo*.  *East v. Johnson*, 123 F.3d 235, 237 (5th Cir. 1997).

Fonceca argues that the district court erred by refusing to require disclosure of a government agent's reports relating to the debriefings of cooperating witnesses as required by the Jencks Act.  Fonceca also contends that the material was

17

potentially *Brady–Giglio*[8] material. Finally, Fonceca contends

that the reports should have been discoverable in any case

because the agent who wrote the reports testified at trial.

Fonceca's arguments do not succeed.

First, the agent who drafted the reports of the witness

interviews was himself a witness at trial but he did not testify

about what the co-conspirators told him in the course of his

witness interviews.  We have held that a testifying agent's

report of a witness interview is a statement discoverable as to

the agent under the Jencks Act but only if and to the extent it

relates to the subject matter of the agent's direct testimony.

*United States v. Welch*, 810 F.2d 485, 490 (5th Cir. 1987); *United

States v. Gaston*, 608 F.2d 607, 612 (5th Cir. 1979).  Also, the

agent's reports or notes are not Jencks Act material as to a

testifying co-conspirator who is not shown to have adopted the

statements in the reports or notes.  18 U.S.C. § 3500(e); *United

States v. Martinez*, 87 F.3d 731, 736-37 (5th Cir. 1996); *Welch*,

810 F.2d at 490.  Fonceca's assertion that the notes could be

---

[8]  *Brady v. Maryland*, 83 S.Ct. 1194, 1196–97 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"); *Giglio v. United States*, 92 S.Ct. 763 (1972) (holding that prosecution's duty to present all material evidence to the jury was not fulfilled when it became known the government failed to disclose an alleged promise of leniency made to its key witness in return for his testimony).

used to impeach the testifying co-conspirators is purely speculative. Appellant's arguments are unavailing, especially considering that the government had an open-file policy and had tendered the notes or reports to the district judge for *in camera* inspection. The fact that the district court declined the government's invitation to examine the notes or reports does not convert them to discoverable Jencks Act material. We have held that the district court only has a duty to make such an *in camera* inspection of alleged Jencks Act material "if a timely request is made by the defense *and* some indication exists in the record that the notes meet the Jencks Act's definition of a statement." *United States v. Hogan*, 763 F.2d 697, 704 (5th Cir.), *opinion withdrawn in part*, 771 F.2d 82 (5th Cir. 1985). There is no such indication here. Additionally, there was no request that the material at issue be made a part of the record on appeal.

Fonceca has not shown error.

## D. Restriction of Fonceca's Cross-Examination of Dominguez

Fonceca argues that the district court erred by sustaining the prosecution's objections to her cross-examination of Dominguez regarding aspects of Dominguez's plea agreement. Fonceca claims her Sixth Amendment right to confrontation was violated because she was unable to ask Dominguez about the "factual basis" underlying his plea agreement.

Since Fonceca did not object to the district court's rulings

19

below, we review for plain error.  *United States v. Mares*, 402 F.3d 511, 520–21 (5th Cir. 2005).  We will correct an error shown to be plain if Fonceca establishes (1) an error (2) that is plain or obvious (3) and that affects appellant's substantial rights. *United States v. Olano*, 113 S.Ct. 1770, 1776–77 (1993).  We exercise our discretion to correct an error that affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Fonceca has not met her burden on this issue.  She was allowed to cross-examine Dominguez concerning his incentives to testify under his plea agreement, and Fonceca was able to pose similar questions as those denied to another co-conspirator, Carrasco, regarding the factual basis of his plea agreement. Also, Fonceca was able to ask Dominguez about various inconsistencies in his multiple debriefings with the government. Fonceca has not established that the limitations on her cross-examination were clearly prejudicial and prevented the jury from hearing sufficient information to "appropriately draw inferences relating to the reliability of the witness." *United States v. Restivo*, 8 F.3d 274, 278 (5th Cir. 1993).

**E.  Denial of Fonceca's Motion for Mistrial due to Inadvertent Admission of 404(b) Evidence**

We review the denial of a motion for mistrial for abuse of discretion.  *United States v. Akpan*, 407 F.3d 360, 366 (5th Cir. 2005).  When a defendant's motion for mistrial alleges

prejudicial testimony, there is reversible error only if the evidence, when viewed in the context of the trial as whole, is so highly prejudicial that it likely would have had a "substantial impact" on the jury's verdict. *United States v. Limones*, 8 F.3d 1004, 1007-08 (5th Cir. 1993).

Before the trial began, both defense counsel and the government agreed that no 404(b) evidence, including that of past crimes, would be offered.   However, while defense counsel was questioning Dominguez, a government witness, the following statement mentioning Fonceca's previous time spent incarcerated was inadvertently elicited in violation of the 404(b) agreement :

> "DEFENSE COUNSEL: Did you know that Maria—and that's Maria Fonceca—and the woman Meeka were they friends?
> DOMINGUEZ: Yes. They married ten years ago when they make time in jail. [sic]
> DEFENSE COUNSEL: May we approach, Your Honor?
> COURT: I'm sorry?
> DEFENSE COUNSEL: Motion to strike as nonresponsive and I'd also like to approach.
> COURT: Sure.
> DEFENSE COUNSEL: The nonresponsive answer just now with the witness that was put before the jury my client has been in jail at some point in the past, I think I'm duty bound to move for a mistrial based on that.  I am so moving under the circumstances.  I don't see how I can do other but I'll submit it.
> . . .
> COURT: I'm not going to grant a mistrial at this point.
> DEFENSE COUNSEL: Okay. That's fine. I'll proceed on."

This testimony was not struck and the jury was not instructed to disregard it.  No lawyer or witness referred to that testimony at any other time during the trial.

Even assuming error, in light of the significant amount of

21

other evidence in the case, this inadvertent remark is not so highly prejudicial that it would have had a "substantial impact" on the jury's verdict. *Limones*, 8 F.3d at 1007-08.  We do not find reversible error.

## F. Perez's Sentence

We review *de novo* the district court's guidelines interpretations. *United States v. Duhon*, 440 F.3d 711, 714 (5th Cir. 2006).  We accept the district court's fact findings unless they are clearly erroneous.  *Id.*  We review the sentence for unreasonableness considering the provisions of 18 U.S.C. § 3553. *Id.*

Perez argues that the disparity between her sentence and that of her co-conspirators was unwarranted, and asserts this point of error for two reasons:

> "(1) to preserve the issue in the event the Supreme Court decides that under facts similar to those in this case the disparity is not warranted; and (2) . . . because of the timing of her arrest and her inclusion in the case as a defendant, she was not presented with any opportunity to provide substantial assistance and therefore was not similarly situated to the co-conspirators who testified against her."

Perez was sentenced to 292 months' imprisonment, while her co-conspirators (other than Fonceca) were sentenced to significantly lower sentences due to their assistance to the government in prosecuting this case.

We rejected an argument similar to Perez's in *Duhon*, 440 F.3d at 720 (holding that "sentencing disparity produced by

22

substantial assistance departures was intended by Congress and is thus not a proper sentencing consideration under section 3553(a)(6)"). *Duhon* noted that district courts should "avoid disparity among similarly-situated defendants *nationwide* rather than disparity with [the defendant]'s differently situated codefendant." *Duhon*, 440 F.3d at 721 (emphasis added).

Perez's attempts to distinguish her situation from that in *Duhon* are unavailing. There is no requirement that the government provide equal opportunities for cooperation to all co-defendants. We affirm Perez's sentence.

## III. Conclusion

For the foregoing reasons, we AFFIRM the convictions and sentences of appellants Fonceca and Perez.

AFFIRMED