**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4297**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

JEFFREY ALEXANDER STERLING,

Defendant − Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:10−cr−00485−LMB−1)

Argued:  December 6, 2016                           Decided:  June 22, 2017

Before GREGORY, Chief Judge, and TRAXLER and DIAZ, Circuit Judges.

Affirmed in part and vacated in part by published opinion.  Judge Diaz wrote the majority opinion, in which Chief Judge Gregory joined.  Judge Traxler wrote an opinion concurring in part and dissenting in part.

**ARGUED**: William James Trunk, ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER, LLP, Washington, D.C., for Appellant.  Eric Gary Olshan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF**: Lawrence S. Robbins, ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER, LLP, Washington, D.C., for Appellant.  Leslie R. Caldwell, Assistant Attorney General, Sung-Hee Suh, Deputy Assistant Attorney General, Robert A. Parker, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE,

Washington, D.C.; Dana J. Boente, United States Attorney, James L. Trump, Dennis M. Fitzpatrick, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

———————————

DIAZ, Circuit Judge:

Jeffrey Sterling, a former Central Intelligence Agency ("CIA") agent, appeals his convictions for unauthorized disclosure of national defense information, unlawful retention and disclosure of classified information, attempted unauthorized disclosure of classified information, unauthorized conveyance of government property, and obstruction of justice. Sterling argues that the district court incorrectly instructed the jury on venue and improperly admitted evidence showing his prior retention of classified documents. He also disputes the jury's finding that venue was proper in the Eastern District of Virginia, as well as the jury's verdict to convict on obstruction of justice.

We hold that the government failed to prove proper venue for one of Sterling's offenses: unauthorized disclosure to a reporter of a letter relating to a classified program. As for the other charged crimes, we conclude that there is sufficient evidence in the record to support the jury's findings that—more likely than not—Sterling committed the essential conduct of these offenses in the Eastern District of Virginia. There was also sufficient evidence for the jury to conclude—beyond a reasonable doubt—that Sterling obstructed justice by trying to conceal an email from a grand jury investigation. Finally, the district court did not commit reversible error when instructing the jury on venue, nor did it abuse its discretion when it allowed the government to introduce evidence that Sterling kept classified documents in his home. Accordingly, we vacate Sterling's conviction for unauthorized disclosure of the program letter, but otherwise affirm the judgment.

3

I.

A.

Sterling worked for the CIA from 1993 to 2002; during that time, he was assigned to a classified program that aimed to disrupt Iran's nuclear capability. Sterling was the program's case manager for almost two years, and served as the primary contact for a Russian scientist. The CIA would pass on realistic but ultimately flawed nuclear plans to the scientist, who would in turn give them to officials in the Iranian government. Sterling's involvement with the program ended in May 2000, after which he moved from New York to Herndon, Virginia to work at the agency's headquarters.

In the meantime, Sterling's relationship with the CIA had steadily deteriorated. Around the same time that his involvement with the classified program ended, Sterling filed an equal employment opportunity complaint against the agency alleging discrimination on the basis of race. The complaint was dismissed after an internal review. Sterling then filed suit in the Southern District of New York, but the case was later transferred to the Eastern District of Virginia. Following the transfer, the government moved to dismiss the case based on the state secrets doctrine. The district court granted the motion, finding that Sterling would need to disclose classified national security information in order to pursue his claim, and we affirmed this dismissal. *See Sterling v. Tenet*, 416 F.3d 338, 341–42 (4th Cir. 2005). Ultimately, the CIA fired Sterling, who left the organization in January 2002. Sterling later relocated to Missouri in August 2003.

B.

In April 2003, *New York Times* reporter James Risen informed the CIA that he had learned about the classified program and intended to publish an article about it. Risen had previously written a story on Sterling's discrimination lawsuit. After top government officials met with the *New York Times* to express security-related concerns about the article, the *Times* decided not to run it. Risen then wrote a book, entitled *State of War: The Secret History of the CIA and the Bush Administration*, which contained classified details about the program and its activities. Among other things, the book included a copy of a letter that the Russian scientist—Sterling's former point of contact in the program—gave to Iranian officials, describing the nuclear plans he was sharing.

The Federal Bureau of Investigation ("FBI") began investigating Risen's potential sources in April 2003, when Risen first informed the CIA that he intended to publish an article about the program. This investigation yielded circumstantial evidence against Sterling, including evidence of numerous short phone calls between Risen and Sterling from 2003 to 2005, Sterling's past connection with Risen because of the 2002 discrimination lawsuit article, and an email sent from Sterling to Risen in March 2003 linking to a CNN article about Iran's nuclear program.

After *State of War* was published in 2006, the government continued its efforts to identify Risen's sources. The government served Sterling with a subpoena on June 16, 2006, commanding him to produce all classified documents in his possession and any other documents concerning CIA operations. And in October 2006, the FBI seized four classified CIA documents from Sterling's Missouri home.

C.

In December 2010, a grand jury in the Eastern District of Virginia returned a ten-count indictment charging Sterling with causing unauthorized disclosure of national defense information to the public (Counts I and II), in violation of 18 U.S.C. § 793(d) and (e); unlawful retention of a classified letter relating to the program (Count III), in violation of 18 U.S.C. § 793(e); unauthorized disclosure to Risen of classified information (Count IV) and the program letter (Count V), in violation of 18 U.S.C. § 793(d) and (e); attempted unauthorized disclosure of classified information (Counts VI and VII), in violation of 18 U.S.C. § 793(d) and (e); mail fraud (Count VIII), in violation of 18 U.S.C. § 1341; unauthorized conveyance of government property (Count IX), in violation of 18 U.S.C. § 641; and obstruction of justice (Count X), in violation of 18 U.S.C. § 1512(c)(1).

The government attempted to force Risen to testify about his sources, and we prevented Risen from exercising a reporter's privilege. *United States v. Sterling*, 724 F.3d 482 (4th Cir. 2013). Despite that victory, the government implied that Risen would not be punished if he refused to disclose his sources, and in pre-trial proceedings, Risen declined to identify those sources or where he met them to receive classified information. Ultimately, the government chose not to call Risen at trial; rather, the parties stipulated that were he to testify, Risen would refuse to identify his sources.

Sterling argued at trial that he was not Risen's source, but the government introduced evidence suggesting otherwise, including phone records and testimony from others involved in the classified program. The government also introduced (over

6

Sterling's objection) four classified documents seized from Sterling's Missouri home, under Federal Rule of Evidence 404(b), to establish that Sterling's modus operandi was to store classified CIA materials in his residence.

At the close of the evidence, Sterling moved for a judgment of acquittal, based in part on insufficient evidence and on improper venue. The district court dismissed Count VIII (mail fraud) but otherwise denied Sterling's motion. It then instructed the jury that it could find that venue was proper in the Eastern District of Virginia so long as "at least one act in furtherance of that [charged] offense" occurred within the district. J.A. 2319.

After three days of deliberations, the jury convicted Sterling of all remaining counts. The district court later sentenced Sterling to forty-two months of imprisonment on each count, to be served concurrently.

This appeal followed.

## II.

We first address Sterling's challenges to venue, including his objection to the district court's instructions on the issue. Proper venue is a requirement stemming from the Constitution, which grants criminal defendants the right to a trial in the state where the crime was committed. U.S. Const. art. III, § 2, cl. 3. Venue must lie as to each count charged in an indictment. *United States v. Engle*, 676 F.3d 405, 413 (4th Cir. 2012).

When a criminal statute does not contain a venue provision, we must examine the criminal offense and the location of the acts constituting it. *United States v. Smith*, 452 F.3d 323, 334 (4th Cir. 2006). Venue is "proper only in a district in which an essential

7

conduct element of the offense took place." *Id.* at 334–35 (quoting *United States v. Villarini*, 238 F.3d 530, 533–34 (4th Cir. 2001)).

Determining where proper venue lies is therefore a two-step process. First, we must "identify the conduct constituting the offense." *Id.* In determining the offense's "essential conduct" elements, courts may start by analyzing the key "verbs" or actions sanctioned by the statute, though this is not the sole consideration. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279–80 (1999). Second, we must determine where "the criminal conduct was committed." *Smith*, 452 F.3d at 334–35. If essential criminal conduct takes place in more than one district, the government may prosecute those offenses "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). Acts which are merely "preparatory" to the underlying offense and its essential conduct, however, cannot provide a basis for venue. *See United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005) (finding that for purposes of mail fraud, venue lies where an individual actually misuses the mails, and not where an individual only devises a scheme to defraud).

We review de novo whether there was sufficient evidence to support a jury's finding of venue. *United States v. Burns*, 990 F.2d 1426, 1431, 1436–37 (4th Cir. 1993). We will uphold the jury's finding if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found venue by a preponderance of the evidence. *Id.* at 1437. Importantly, while circumstantial evidence can support a finding of proper venue, a jury's inferences "must be supported by some evidence in the record as a whole." *United States v. Strain*, 396 F.3d 689, 695 (5th Cir. 2005).

8

## A.

We begin by examining Counts I, II, and IX, which charged Sterling with willfully causing the disclosure and conveyance of classified information, including a letter used in the classified program, to the public. The government advances two theories for why venue was proper as to these counts: first, because Sterling disclosed information to Risen regarding the program while in the Eastern District of Virginia; and second, because the book Risen ultimately published was distributed in Virginia. We accept the government's first theory and therefore do not address its second, more expansive, theory of venue.

The government presented evidence of numerous phone calls in February and March 2003, between Sterling's home in Virginia and Risen's home in Maryland. These phone calls occurred right before Risen notified the CIA that he had learned about the program from confidential sources and was planning to write an article about its classified operations. Furthermore, all of these calls were made nearly a year after Risen wrote an article about Sterling's discrimination lawsuit.

That circumstantial evidence, viewed in the light most favorable to the government, could have led a rational jury to infer that Sterling discussed some classified information with Risen during these calls—the longest of which was 91 seconds—or encouraged Risen to publish the information. Thus, a jury could find that, more likely than not, Sterling helped "cause" dissemination of the information to the public through phone communications from his home in the Eastern District of Virginia, making venue proper for Counts I, II, and IX.

9

As for Count IV, relating to the improper transmission of classified information to Risen, the same evidence supports finding proper venue. Viewing this evidence in a light most favorable to the government, a rational jury could have found that Sterling passed along at least some classified information about the program to Risen, who then approached the CIA shortly afterwards. Such an inference supports venue because the transmission of the information, an essential conduct element of the statute, would have occurred in the Eastern District of Virginia.

Sterling resists this conclusion, relying on *Strain*, 396 F.3d at 689. In that case, a defendant in Texas communicated by telephone with her fugitive husband in New Mexico. *Id.* at 691. During the defendant's subsequent trial for harboring or concealing a fugitive, which took place in the Western District of Texas, the government presented evidence of the phone call and the defendant was ultimately convicted. *Id.* at 692–93.

The Fifth Circuit reversed on venue grounds. While the evidence at trial showed that during the phone call, the defendant made plans to meet with her husband in New Mexico, it did not show that she actually warned her husband to stay away from law enforcement. *Id.* at 695. Without any direct or circumstantial evidence that the defendant concealed her fugitive husband while she was in Texas, venue was therefore improper in the Western District. *Id.* Here by contrast, sufficient circumstantial evidence exists for the jury to infer that Sterling and Risen, more likely than not, discussed classified information or its potential publication during their numerous communications in February and March 2003.

We next turn to Counts VI and VII, which are attempt counts and thus proscribe substantial steps taken by the defendant toward completion of his criminal goal. *United States v. Pratt*, 351 F.3d 131, 135–36 (4th Cir. 2003). As such, venue is proper anywhere Sterling committed a substantial step toward communicating, delivering, and transmitting information about the Program to the general public.

At trial, the government argued that Sterling gave Risen classified information to be published in the *New York Times*, but that intervention by top government officials prevented its publication. The government also presented evidence that Sterling called Risen multiple times during this period and sent him an email drawing attention to the Iran nuclear program, all from his home in Virginia. Based on this evidence, a rational jury could have inferred that Sterling tried to convince Risen to publish the information, and since those communications originated in Virginia, also find that venue was proper.

Sterling argues that the government did not request a "substantial step" jury instruction for the attempt counts, and thus, a jury could not convict him based only on substantial steps taken in Virginia. Appellant's Reply Br. at 7. But while such a jury instruction might be necessary to convict Sterling solely on these steps, it was not necessary for the jury to find proper venue. A jury could still find that the crime of attempt was at least "begun" or "continued" in the Eastern District of Virginia based on some of the steps Sterling took while in the district, such as when he followed up with Risen about the program during one of their phone calls. *See Smith*, 452 F.3d at 334 (finding that venue may be proper even if "the gravamen of the wrongdoing took place elsewhere").

11

Next we analyze Count III, which charged Sterling with improper retention of classified information (in this case, a letter used in the program), in violation of 18 U.S.C. § 793(e). As to this offense, the Russian scientist testified that he gave Sterling a copy of the program letter in 2000. Sterling lost access to classified materials after he was fired in early 2002 (when he was working and living in Virginia), and Risen first notified authorities that he had seen the letter in April 2003. Finally, the government introduced evidence that in 2006, Sterling had stored other classified documents in his Missouri home, after he moved in mid-2003. On this evidence, a jury could therefore reasonably infer that after Sterling left the CIA in 2002, he unlawfully retained the program letter in his home—which was then in the Eastern District of Virginia.

Sterling relies on *United States v. Evans*, 318 F.3d 1011 (10th Cir. 2003), to dispute the government's "venue-by-vicinity" theory. Appellant's Reply Br. at 8. In *Evans*, the government presented evidence of methamphetamine manufacturing at the defendant's trailer, but failed to present any actual evidence of where that trailer was located. 318 F.3d at 1021. In this case, however, government officials proved conclusively that Sterling's home and the CIA office where he worked before his termination were both in the Eastern District of Virginia. The only inference required was for the jury to believe that Sterling improperly retained the program letter after his 2002 termination, before giving it to Risen by spring 2003. That inference, in turn, supports the conclusion that venue was proper in the Eastern District of Virginia by a preponderance of the evidence.

Finally, we turn to Count V, which relates to Sterling's unlawful delivery or transmission of the program letter to Risen, in violation of 18 U.S.C. § 793(e). Because both sides agree that Sterling provided Risen with a paper copy of the letter, evidence of phone and email communications alone cannot support proper venue for Count V. The government concedes that it did not present direct evidence at trial of how or where this physical transmission took place. Appellee's Br. at 27. Sterling says that without such evidence, the jury could only speculate that the transmission occurred or began in the Eastern District of Virginia. We agree.

We begin by identifying the essential conduct elements of § 793(e), which sanctions, among other things, anyone who "willfully *communicates, delivers, transmits*" or causes or attempts any such transmission of national defense information "to any person not entitled to receive it." *Id.* § 793(e) (emphasis added).[1] Critically, these essential conduct elements—"communicates, delivers, transmits"—do not necessarily encompass every movement of national defense information. Instead, the terms sanction

---

[1] We have examined § 793(e)'s conduct elements for venue purposes before. In *United States v. Truong Dinh Hung*, a defendant objected to his conviction under § 793(e) on venue grounds, arguing that he should have been tried in the District of Columbia, where he initially received the sensitive documents. 629 F.2d 908, 919 n.11 (4th Cir. 1980). We found that even though the defendant received "the documents in the District of Columbia, [he] passed them to [a colleague] in Alexandria, Virginia. Since [that colleague] was the means by which the documents were carried to [foreign government agents], the proscribed act, the act of transmission, took place in Alexandria." *Id.* We did not have occasion to consider there whether venue was also proper in the District of Columbia.

movement of such information as part of a process designed to give it to another[2]—in this case to "any person not entitled to receive it." *Id.*

Thus, to find proper venue for Count V, a jury needed to determine that "an essential conduct element" of § 793(e)—here, communication, delivery, or transmission—occurred in the Eastern District of Virginia. If this essential conduct continued across state or district lines, 18 U.S.C. § 3237(a) also makes venue proper "in any district in which" communication, delivery, or transmission of the Program letter "was begun, continued, or completed."

Because the government presented no evidence about where Risen actually received the letter, both parties focus on where the transmission began. The government asserts that because Sterling kept the classified program letter in his Virginia home, the process of communicating, delivering, or transmitting the letter's contents to Risen likely began within the Eastern District of Virginia.

However, we are not "aware of . . . any rule of law that establishes such a presumption." *Evans*, 318 F.3d at 1022. Nor do we find any "evidentiary hook to which the jury might attach the [suggested] inference." *Strain*, 396 F.3d at 695. The mere fact that Sterling kept the letter in his Virginia home does not, by itself, mean that the process of transmission, delivery, or communication to Risen began there. The government offered no evidence showing how Sterling transmitted or delivered the letter to Risen,

---

[2] *See Random House Webster's Unabridged Dictionary* 414, 528, 2011 (2d ed. 2001) (defining "communicate" as "to impart knowledge of" and "to give to another"; defining "deliver" as "to carry and turn over . . . to the intended recipient or recipients"; and defining "transmit" as "to send or forward, as to a recipient or destination").

including the procedure and location of any transfer. Thus, the jury could only speculate that Sterling moved the letter from Virginia as part of his plan to transmit and deliver it to Risen, and that all of these actions were part of a continuous offense driven "by a single impulse and operated by an unintermittent force." *Id.* at 697 (quoting *United States v. Asibor*, 109 F.3d 1023, 1031 (5th Cir. 1997)).

The government's approach to proving venue for Count III, which charged Sterling with unlawful retention of the letter, provides a useful contrast. For that count, the government also had no direct evidence that Sterling committed an essential conduct element in the Eastern District of Virginia. As we discuss later, however, the government offered evidence suggesting that Sterling stored CIA documents in his residence. This allowed the jury to infer that if Sterling unlawfully retained the program letter in 2002, he did so at his residence, which in 2002 was in the Eastern District of Virginia.

No such evidence was offered for Count V, leaving the jury to speculate about how and where the letter was transmitted. If, for example, the government had offered evidence showing how Sterling transmitted classified information in the past, a jury might have been able to infer that a similar method was used to transmit the letter to Risen. That, in turn, might have provided a basis for the jury to determine whether the process of communication, delivery, or transmission began in the Eastern District of Virginia, thus supporting venue. Absent such evidence, we agree with Sterling that the government failed to shoulder its burden as to venue with respect to Count V.

15

B.

We next turn to the district court's jury instructions on venue. The district court instructed the jury that the government needed to establish venue for each offense because "a defendant has a right to be tried in the district where the offense was committed." J.A. 2319. Over Sterling's objection, the court went on to instruct the jury it needed to find that it was "more likely than not that *at least one act in furtherance of that offense* occurred in the Eastern District of Virginia." J.A. 2319 (emphasis added).[3]

During the second day of deliberations, the jury asked (for purposes of Count III) whether there was any significance to the statute's not requiring Sterling to actually possess the classified program letter in his residence. The district court, with Sterling's approval, instructed the jury it needed to find that "willful retention" of the letter "occurred in the Eastern District of Virginia by a preponderance of the evidence" in order to find proper venue. J.A. 2372. The Court also instructed the jury that this explanation was consistent with its previous instructions on venue.

Both the government and Sterling agree that mere "preparatory acts" cannot support a finding of proper venue. They dispute, however, whether the district court's jury instruction erroneously allowed the jury to find proper venue based on a finding that *any* preparatory act occurred in the Eastern District of Virginia. We agree with Sterling

---

[3] In *United States v. Ebersole*, we approved of a similar "act in furtherance" venue instruction for the continuing offense of wire fraud. 411 F.3d 517, 525, 531–33 (4th Cir. 2005). Essential conduct elements, and not preparatory actions, remain the focus of venue analysis, but 18 U.S.C. § 3237(a) allows venue to be proper in more than one district, when such essential conduct occurs in multiple districts. *Id.* at 531.

16

that the court's initial instruction was ambiguous about whether the jury could find venue based on the location of preparatory acts rather than essential conduct elements.

The court, however, coupled the "act in furtherance" instruction with an earlier statement to the jury that the defendant must be tried "where the offense was committed." J.A. 2319. This appropriately conveyed to the jury how to determine venue for crimes like unauthorized dissemination and retention of classified information. Similar to fraud, the essential conduct elements for these crimes can occur in multiple districts. Furthermore, the district court's supplemental instruction for Count III helped dispel any ambiguity, by clarifying that "willful retention" (and not just mere preparation for such retention) needed to occur in the Eastern District of Virginia for the jury to find proper venue.[4] With this additional guidance, the district court adequately prevented the jury from finding venue based on the situs of preparatory acts. Therefore, we find no reversible error in the court's jury instructions on venue.

## III.

Sterling next challenges his conviction for obstruction of justice under 18 U.S.C. § 1512(c)(1), arguing that the evidence was insufficient for the jury to find him guilty of the offense. A defendant challenging the sufficiency of the evidence "bears a heavy

---

[4] Sterling relies on the First Circuit's decision in *United States v. Georgacarakos*, 988 F.2d 1289, 1294 (1st Cir. 1993), where the court held that a similar "act in furtherance" venue instruction was erroneous because it encouraged finding venue based on preparatory acts. The jury instructions in that case, however, do not appear to have included a background statement about the need to try the defendant "where the act was committed," nor did the district court there later clarify any ambiguity.

17

burden." *United States v. Wilson*, 503 F.3d 195, 197 (2d Cir. 2007). As to this issue, we "view the evidence in the light most favorable to the government" and will affirm the verdict "if *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Barefoot*, 754 F.3d 226, 233 (4th Cir. 2014).

To secure a conviction under § 1512(c)(1) in this case, the government needed to prove that the defendant knowingly and "corruptly" altered or destroyed a document or object with the intent to impair that document or object's use in an official proceeding or investigation. *Id.* The government alleged that Sterling, after receiving a subpoena in June 2006, deleted an email he had sent to Risen in March 2003. The email provided a link to a CNN article about the Iran nuclear program, and also included the text: "I'm sure you've already seen this, but quite interesting, don't you think? All the more reason to wonder . . . ." J.A. 2801.

The government analyzed two "snapshots" of Sterling's Hotmail account, one in April 2006, and one in July 2006, with the March 2003 email present in the former snapshot but absent in the latter. An agent who analyzed the emails also testified that she could not "recall there being a considerable difference" between the two snapshots, other than the missing email from Sterling to Risen. J.A. 1965–66.

Sterling notes that this specific email "was not among the categories of documents requested by the grand jury's [June 2006] subpoena." Appellant's Br. at 44. He argues, therefore, that even if he did delete the email, he could not have done so with the intent to impair the grand jury investigation. But while the email may not have been explicitly

18

included in the subpoena's categories, in that it did not directly share information about the classified program, it did reference Iran's nuclear development efforts. Furthermore, the email and its brief comments suggest that Risen and Sterling had previously discussed Iran's nuclear program.

We have said that to be culpable of obstructing justice, the actual documents destroyed "do not have to be under subpoena." *United States v. Gravely*, 840 F.2d 1156, 1160 (4th Cir. 1988) (analyzing a conviction for obstruction of justice under 18 U.S.C. § 1503). Instead, "it is sufficient if the defendant is aware that the grand jury will likely seek the documents in its investigation." *Id.* A rational jury could infer, based on the evidence at trial, that Sterling deleted the email between April and July 2006 in order to conceal it from a grand jury investigation. We therefore reject Sterling's challenge to this conviction.

IV.

Finally, Sterling challenges the district court's admission of evidence under Federal Rule of Evidence 404(b) showing that he previously and improperly kept four classified documents, all unrelated to the Program at issue here, in his home. We review evidentiary rulings for an abuse of discretion. *United States v. Singh*, 518 F.3d 236, 254 (4th Cir. 2008).

The government contends that the evidence was relevant to show that Sterling "willfully retained" classified information in violation of 18 U.S.C. § 793(e), as charged in Count III of the indictment. Sterling responds that his intent was never at issue in this

19

case; instead, Sterling argued throughout the trial that he never retained or transmitted classified material. We agree with the government.

Rule 404(b) allows admission of evidence of the defendant's past wrongs or acts, as long as the evidence is not offered to prove the defendant's predisposition toward criminal behavior. *United States v. Wilson*, 624 F.3d 640, 651 (4th Cir. 2010). Rule 404(b) is a rule of inclusion, and its list of permissible uses, including motive, opportunity, and intent, is not exhaustive. *United States v. Queen*, 132 F.3d 991, 994–95 (4th Cir. 1997). To be admissible under Rule 404(b), the evidence must be (1) relevant to an issue other than the general character of the defendant, (2) necessary to prove an essential claim or element of the charged offense, and (3) reliable. *United States v. Siegel*, 536 F.3d 306, 317–19 (4th Cir. 2008). Additionally, Rule 403 demands that the evidence's probative value not be substantially outweighed by its unfair prejudice to the defendant. *Id.* at 319.

Turning to the first Rule 404(b) factor, "[a] not-guilty plea puts one's intent at issue and thereby makes relevant evidence of similar prior crimes when that evidence proves criminal intent." *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997). Just because the charged crime includes an intent element, however, "does not throw open the door to any sort of other crimes evidence." *United States v. Bailey*, 990 F.2d 119, 123 (4th Cir. 1993). We instead conduct a case-by-case analysis to determine whether intent is at issue in a manner that allows Rule 404(b) evidence. *United States v. Hernandez*, 975 F.2d 1035, 1040 (4th Cir. 1992).

20

Evidence is relevant "if it has any tendency to make the existence of any determinative fact more probable than it would be absent the evidence." *United States v. Van Metre*, 150 F.3d 339, 349 (4th Cir. 1998). When determining relevance, we also examine how closely the prior acts relate to the charged conduct. *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012). While the past conduct "need not be identical" to the crime charged, *United States v. McLaurin*, 764 F.3d 372, 382 (4th Cir. 2014), the mere fact that a defendant may have been involved in prior criminal activity does not itself provide "a sufficient nexus to the charged conduct" if the prior activity "is not related in time, manner, place, or pattern of conduct," *United States v. Johnson*, 617 F.3d 286, 297 (4th Cir. 2010).

Although the Rule 404(b) evidence was fairly old in this case, it did bear sufficient similarity in terms of pattern of conduct to justify its admission. An FBI search of Sterling's Missouri home in 2006 uncovered four classified documents, which Sterling had improperly kept. And Sterling's improper retention of these documents occurred during the same timeframe as his improper retention of files concerning the Program. Furthermore, the prior bad acts were exactly the same as the act Sterling was charged with under Count III. Finally, as we discuss below, the prior acts were also relevant to Sterling's intent.

We next consider whether the prior bad acts evidence was necessary. We have found that evidence is necessary when it is "probative of an essential claim or an element" in a manner not offered by "other evidence available to the government." *Queen*, 132 F.3d at 997–98. Importantly, we have declined to adopt the rule of some

21

other circuits that "evidence of other crimes may not be offered when the defendant unequivocally denies committing the acts charged in the indictment." *Hernandez,* 975 F.2d at 1040. Therefore, Rule 404(b) evidence may still be relevant to prove intent or knowledge, even if the defendant does not base his defense on scienter. *Queen*, 132 F.3d at 997.

In this case, Sterling pleaded not guilty to all charges. The government did not know whether the jury would have to decide whether to convict Sterling on Count III (willful unauthorized retention of classified documents), should it decide to acquit him on the other counts involving unauthorized transfer of this information. To address that possibility, the Rule 404(b) evidence allowed the jury to infer Sterling's intent to unlawfully retain the documents, even if the jury found that Sterling did not transfer them to Risen. The evidence also allowed the government to prove venue for Count III, based on the inference that Sterling stored classified documents in his residence. "[T]he government, which has the burden of proving every element of the crime charged, must have the freedom to decide how to discharge that burden." *Id.*

Looking at the third factor, reliability, the evidence must be sufficient to allow the jury to "reasonably conclude that the act[s] occurred and that the defendant was the actor." *United States v. Powers*, 59 F.3d 1460, 1467 (4th Cir. 1995) (alteration in original) (quoting *Huddleston v. United States*, 485 U.S. 681, 689 (1988)). Here, the government's evidence showed that the classified documents were found in Sterling's home pursuant to a valid search warrant, and there was no dispute that they were in fact

22

classified or that Sterling had stored them in that location. Thus, the challenged evidence meets the standard for reliability.

Finally, the probative value of the evidence was not substantially outweighed by unfair prejudice to the defendant. All probative evidence may be prejudicial to the defendant in some way, but we have found Rule 404(b) evidence to be unfairly prejudicial when it inflames the jury or encourages them to draw an inference against the defendant, based solely on a judgment about the defendant's criminal character or wicked disposition. *McBride*, 676 F.3d at 399; *Hernandez*, 975 F.2d at 1041.

Here, evidence showing that Sterling had improperly retained four classified documents in the past encouraged the proper evidentiary inference that any subsequent retention of classified documents was, if proven, intentional. And contrary to Sterling's argument on appeal, the government's references to this evidence during closing argument did not depict him as a serial leaker or inherent criminal. Instead, the government merely noted that Sterling intentionally kept these documents in his home; the inference this encouraged was certainly prejudicial, but not unfairly so. Additionally, the court's jury instructions explicitly prohibited the jury from using this prior bad act evidence as proof that Sterling committed the acts charged in the indictment. *See United States v. Lespier*, 725 F.3d 437, 448 (4th Cir. 2013) (finding that limiting instruction effectively mitigated "any risk of unfair prejudice").

Because the government's use of Rule 404(b) evidence satisfies our test for admissibility, we conclude that the district court did not abuse its discretion in admitting it.

23

V.

For the reasons given, we vacate Sterling's conviction for unauthorized disclosure to Risen of a letter relating to the classified Program (Count V), but otherwise affirm the convictions. As for sentencing, the district court imposed forty-two months imprisonment for each conviction, to be served concurrently. Because the district court also made clear that Sterling's sentence was appropriate for any single count of conviction, we discern no reason to remand for resentencing.

*AFFIRMED IN PART*
*AND VACATED IN PART*

TRAXLER, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion, with the exception of its holding that the government failed to prove proper venue for Sterling's conviction on Count V. I would affirm the judgment in its entirety.

Count V relates to Sterling's unlawful delivery or transmission of the Merlin letter to Risen, in violation of 18 U.S.C. § 793(e), which in pertinent part provides as follows:

> Whoever having *unauthorized* possession of, access to, or control over any document . . . or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, *willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted* . . . the same to any person not entitled to receive it . . . [s]hall be fined . . . or imprisoned not more than ten years, or both.

*Id.* (emphasis added). Unlike in the case of the counts brought under 18 U.S.C. § 793(d), which involve Sterling's unlawful disclosure of general classified information about the Iran nuclear program that he was "*lawfully*" in possession of as a former CIA agent, *id.*, a violation of § 793(e) consists of at least two essential elements: the defendant must (1) "hav[e] *unauthorized* possession of, access to, or control over" the classified information or document at issue; and (2) have "willfully communicate[d], deliver[ed], or transmit[ted]" the information or document "to any person not entitled to receive it." *Id.* (emphasis added). And if this offense continued across state or district lines, 18 U.S.C. § 3237(a) makes venue proper "in any district in which such offense was begun, continued, or completed."

As the majority notes in connection with Count III, there was ample evidence from which the jury could reasonably infer that Sterling took "unauthorized possession of" the

25

Merlin letter when he left his employment with the CIA in the Eastern District of Virginia and illegally retained it in his home in the Eastern District of Virginia, before giving it to Risen by spring 2003. That inference also supports the jury's conclusion that Sterling, at a minimum, began the process of communicating, delivering, or transmitting the stolen copy of the Merlin letter to Risen from the Eastern District of Virginia.