**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 17-4544**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DWIGHT CHRISTOPHER BROWN,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:16-cr-00166-FL-1)

_____

Submitted: August 29, 2018                    Decided: March 28, 2019

_____

Before TRAXLER and KEENAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

Seth A. Neyhart, STARK LAW GROUP, PLLC, Chapel Hill, North Carolina, for Appellant. Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Jake D. Pugh, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dwight Christopher Brown appeals his conviction following a jury trial for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (2012), and his 120-month sentence. Brown contends that the district court improperly allowed the jury to reach a verdict after declaring a mistrial, improperly admitted extrinsic bad-acts evidence under Fed. R. Evid. 404(b), erroneously instructed the jury, and imposed an unreasonable sentence. We affirm.

The evidence at trial established that on March 3, 2016, Raleigh Police Officers Corey Hervey and Alexander Santaniello attempted to stop the car Brown was driving in a parking lot after discovering that the vehicle had been reported stolen.[1] Instead of stopping, Brown jumped out of the moving car and fled through the parking lot. Hervey pursued Brown on foot while Santaniello remained with the car and called for backup. Both officers testified that they had been trained to distinguish firearms from other objects, such as cell phones, and they were certain that they saw a handgun in Brown's right hand when he jumped out of the car. Santaniello also reported that Brown was armed when he called for backup. Santaniello saw Brown throw an object from his right hand during the chase, and the object was heavy enough to kick up dirt when it landed in the parking lot's median. After Brown surrendered and was taken into custody, officers found a handgun in the parking lot median near where Santaniello saw Brown throw the object. When the officers ran a database search on the serial number of the handgun, they discovered that it had been reported stolen in Durham, North Carolina. Santaniello and Hervey both testified

---

[1] The patrol car's dashboard video camera recording was played at trial.

that the firearm found after the chase was the firearm they saw in Brown's hand when he jumped from the car.

Brown first argues on appeal that he is entitled to a new trial because the district court improperly allowed the jury to reach a verdict after having declared a mistrial, and because the court's final instruction was coercive. On the second day of jury deliberations, the jury notified the district court that it had reached an impasse and needed direction as to how to proceed. The court gave the jury an *Allen* charge to which both parties agreed.[2] Later that afternoon, the jury sent the court another note asking about the procedure for substituting an alternate juror for one of the venire panel members. During a colloquy between the jury foreperson and the court, the foreperson stated that one juror had become emotional and was not going to change his or her mind. Brown moved for a mistrial, and over Brown's objection, the district court spoke further with the foreperson regarding the nature of the impasse. The foreperson told the court that the juror in question had been participating in discussions and looking at evidence, but that the foreperson was convinced that the jury would not be able to reach a unanimous verdict.

At this point, the Government withdrew its opposition to Brown's motion for a mistrial, and the district court told the parties that it planned to bring the jury into the courtroom, declare a mistrial, and discharge the jury. Before the jury entered, however, one of Brown's lawyers asked if the court would consider giving the jury one more *Allen* charge. When the jury entered, the court told the jurors that the court was inclined to discharge them, but asked them to return to the jury room one more time to determine, in

---

[2] *Allen v. United States*, 164 U.S. 492 (1896).

their collective view, whether they could reach a unanimous verdict. The court admonished the jury to remember the court's previous instructions. Brown did not object to either the court's decision to instruct the jury to continue discussions or to the instruction the court gave. Shortly after the jury returned to the jury room, it notified the court that it had reached a verdict.

We review a district court's decision to grant or deny a motion for a mistrial for abuse of discretion. *United States v. Johnson*, 587 F.3d 625, 631 (4th Cir. 2009). In this case, before the district court proceeded with its stated intention to declare a mistrial and discharge the jury, one of Brown's attorneys asked if the court would be willing to give one more *Allen* charge to the jury. Given that the judge had not yet discharged the jury, it was not error for the court to grant counsel's request. Furthermore, the court was not required to ensure that Brown personally understood the consequences of and assented to this tactical decision. *See United States v. Chapman*, 593 F.3d 365, 368 (4th Cir. 2010) ("[D]ecisions regarding a mistrial are tactical decisions entrusted to the sound judgment of counsel, not the client."). The district court therefore did not commit reversible error when it allowed the jury to continue deliberating.

Brown next argues that the court's final jury instruction was coercive. Because Brown did not object to this instruction, we review it for plain error. *See United States v. Keita*, 742 F.3d 184, 189 (4th Cir. 2014). Under this standard, Brown must show "there was an error, the error was plain, and the error affected [his] substantial rights." *Id.* Brown claims coercion because the instruction caused a juror to change positions, but he does not point to any specific coercive language. The court's instruction referenced the

4

possibility that the jury would not be able to reach a unanimous verdict, and the court told the jurors to have one final discussion about the possibility of reaching a verdict before the court dismissed them. We discern no coercion, and thus no error.

Brown also contends that his conviction must be reversed because the district court erroneously admitted the testimony of three witnesses. Brown's ex-girlfriend testified that she had given Brown permission to use her car in January 2016, but reported it stolen when Brown did not return the car and did not answer her telephone calls. The lawful owner of the handgun identified it in court and testified that it had been stolen from his home in November 2015. He also testified that he had supervised Brown as a corrections officer while Brown was an inmate at the Durham County Jail. Finally, a Durham County Sheriff's Deputy testified that during a 2012 traffic stop of a car in which Brown was a passenger, he had found a firearm wrapped in a shirt on the seat where Brown had been sitting. Brown subsequently pled guilty to being a felon in possession of a firearm in violation of North Carolina law.

We review the district court's evidentiary rulings for abuse of discretion. *United States v. Faulls*, 821 F.3d 502, 508 (4th Cir. 2016). "Rule 404(b) [, Fed. R. Evid.,] allows admission of evidence of the defendant's past wrongs or acts, as long as the evidence is not offered to prove the defendant's predisposition toward criminal behavior." *United States v. Sterling*, 860 F.3d 233, 246 (4th Cir. 2017). The list of permissible uses for evidence admitted under Rule 404(b), "including motive, opportunity, and intent, is not exhaustive." *Id.* To be admissible under Rule 404(b), evidence must be: (1) relevant to an issue other than the defendant's character; (2) necessary to prove an element of the

5

charged offense; (3) reliable; and (4) admissible under Fed. R. Evid. 403, in that the probative value of the evidence must not be substantially outweighed by its prejudicial nature. *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997).

> The Rule 404(b) inquiry, however, applies only to evidence of other acts that are extrinsic to the one charged. Acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence. Evidence of uncharged conduct is not other crimes evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or if evidence of the uncharged conduct is necessary to complete the story of the crime on trial.

*United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (citations, brackets, and internal quotation marks omitted); *see also United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996).

The district court properly admitted the testimony regarding the theft of the car and theft of the firearm.[3] The officers testified that they attempted to pull Brown over because the car had been reported stolen. The testimony about the car was necessary to complete the story of the crime on trial, and was therefore intrinsic.

The testimony regarding the theft of the gun was admissible under Rule 404(b). The Government used the identity of the firearm's owner, who had a previous connection to Brown, to argue the implausibility of the defense theory that the firearm was already at the scene before the chase occurred. The testimony was therefore relevant and necessary under the first two *Queen* prongs. The district court also gave a proper limiting instruction, telling the jury that Brown was not on trial for burglary and it could consider the testimony about the theft of the firearm only to the extent it bore on whether Brown possessed the

---

[3] Brown does not challenge the reliability of this testimony.

firearm on March 3, 2016. Finally, the fact that the firearm owner testified that he had supervised Brown while Brown was incarcerated did not present an undue risk of unfair prejudice because the parties had already stipulated that Brown was a convicted felon. Because the testimony was relevant and necessary, and its probative value was not substantially outweighed by the potential of unfair prejudice, the district court properly admitted it under Rule 404(b).

We need not decide whether the district court abused its discretion in admitting the testimony about Brown's 2012 conviction for being a felon in possession of a firearm. This is so because any such error is harmless.

Under Rule 52 of the Federal Rule of Criminal Procedure, evidentiary rulings are subject to harmless error review. In conducting harmless error review in the context of an alleged Rule 404(b) error, we decide whether we can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the alleged error. *United States v. Hall*, 858 F.3d 254, 279 (4th Cir. 2017). The burden of establishing that an evidentiary error was harmless falls on the Government. *Id.* at 280. "The overall strength of the government's evidence constitutes an important factor in this inquiry." *United States v. Recio*, 884 F.3d 230, 238 (4th Cir. 2018). We also look to whether the Government used the evidence for a purpose other than that for which the district court admitted it. *Hall*, 858 F.3d at 254.

The Government presented convincing and overwhelming evidence of guilt in this case. Two police officers testified unequivocally that they saw the defendant carry and subsequently throw away a firearm during flight, one of the officers made

7

contemporaneous radio communications stating that the defendant was armed, and the officers found a firearm near the defendant's flightpath. *See Recio*, 884 F.3d at 238. Moreover, none of the jury's questions suggested that the 2012 conviction played a determinative role in the verdict.

During its closing argument the Government did make one reference to the 2012 conviction that went beyond the scope of the court's limiting instruction. This reference was isolated, however, and was not based on propensity or bad character. Because the Government's evidence, independent of the 2012 conviction, was convincing and overwhelming, and the reference to the conviction during closing arguments likely did not sway the jury's ultimate decision, we conclude that the Government has met its burden of showing that this evidentiary error was harmless.

Brown's third contention is that the district court erroneously refused to give the jury an instruction that his mere presence near the firearm did not constitute constructive possession, and to specifically tell the jury that it was legitimate for counsel to attack the credibility of law enforcement witnesses, as opposed to witnesses generally. We review the district court's jury instructions for abuse of discretion. *United States v. Sonmez*, 777 F.3d 684, 688 (4th Cir. 2015). The district court's refusal to give Brown's proposed instructions is not reversible error unless the proposed instructions: "(1) were correct, (2) were not substantially covered by the charge that the district court actually gave to the jury, and (3) involved some point so important that the failure to give the instruction[s] seriously impaired the defendant's defense." *Id.* (internal quotation marks omitted).

8

The district court properly instructed the jury. The central issue in the case was the credibility of the officers' testimony that they were certain that they saw a handgun in Brown's hand when he jumped from the car, and that he threw the gun into the median during the chase. Although the Government contended that Brown's proximity to the spot where the firearm was later found provided strong evidence that he threw it there, the Government did not allege that Brown constructively possessed the firearm because he was close to it. The district court therefore did not impede Brown's case by refusing to give a "mere presence" or "constructive possession" instruction.

The district court also did not abuse its discretion in refusing the requested instruction regarding the cross-examination of law enforcement witnesses. The court instructed the jury on evaluating the credibility of witnesses generally, including the fact that it was perfectly legitimate for the lawyers to attack the credibility of witnesses. The district court determined that it need not, as Brown requested, separately tell the jury that it was legitimate for the lawyers to attack the credibility of law enforcement witnesses. In light of the fact that most of the Government's witnesses were law enforcement officers, and that the district court instructed the jury to treat law enforcement witnesses the same as any other witness, the court's instructions were proper.

Finally, Brown challenges the reasonableness of his sentence. He asserts first that the district court erroneously applied Sentencing Guidelines enhancements for possession of a firearm in connection with another felony and reckless endangerment during flight from a law enforcement officer, respectively. U.S. Sentencing Guidelines Manual §§ 2K2.1(b)(6)(B), 3C1.2 (2016). "In assessing the district court's calculation of the

9

Guidelines range, we review its legal conclusions de novo and its factual findings for clear error." *United States v. Cox*, 744 F.3d 305, 308 (4th Cir. 2014). The Government must show that a Guidelines enhancement applies by a preponderance of the evidence. *United States v. Blauvelt*, 638 F.3d 281, 293 (4th Cir. 2011).

We conclude that the district court properly applied both enhancements. A defendant who "used or possessed any firearm or ammunition in connection with another felony offense is subject to a four-level enhancement. USSG § 2K2.1(b)(6)(B). "Subsection[] (b)(6)(B) . . . appl[ies] if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." USSG § 2K2.1 cmt. n.14(A). "This requirement is satisfied if the firearm had some purpose or effect with respect to the other offense, including if the firearm was present for protection or to embolden the actor." *United States v. Jenkins*, 566 F.3d 160, 162 (4th Cir. 2009) (citation and internal quotation marks omitted). Although the evidence at trial did not show that Brown used the gun to gain physical possession of the car in the first instance, the district court could reasonably conclude that Brown's possession of the firearm emboldened him to maintain possession of the car for over a month.

A defendant who "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer" is subject to a two-level enhancement. USSG § 3C1.2. This enhancement requires "active, willful behavior" as opposed to "mere flight from an arresting officer" or "disagreeableness during an encounter." *United States v. John*, 935 F.2d 644, 648 (4th Cir. 1991). The evidence at trial showed that instead of stopping the car after seeing the patrol car's blue lights, Brown

10

jumped out of the still-moving car with a firearm in his hand, fled on foot, and threw the firearm away. Brown's conduct created a substantial risk of death or serious injury to the officers who were required to pursue and apprehend Brown. His conduct also created a risk that the officers would have to use deadly force to defend themselves, which would have put any bystanders at risk. The district court did not err in applying § 3C1.2.

Brown's final argument is that his 120-month sentence is substantively unreasonable.

> We review a court's sentencing decisions for abuse of discretion only. Any sentence that is within or below a properly calculated Guidelines range is presumptively reasonable. Such a presumption can only be rebutted by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors.

*United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014) (citations and internal quotation marks omitted). Here, the district court imposed the statutory maximum sentence, which was also the Guideline sentence. USSG § 5G1.2(a). The district court properly considered the § 3553(a) factors and determined that in light of the seriousness of the offense, Brown's extensive criminal history, and the need to protect the public, the 120-month sentence was appropriate. Accordingly, we conclude that Brown has not rebutted the presumption of reasonableness attached to his Guidelines sentence, and the district court did not abuse its discretion.

We therefore affirm Brown's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

11